UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>MICHAEL LANCE DAVIS,<br><br>    Defendant. | Case No. 1:18-cr-00046-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Michael Davis's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 67. The Government filed an Opposition to Davis's Motion to which Davis filed a Reply. Dkts. 72, 75. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument.[1] Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

The facts of this case date as far back as February 2012. At that time, Davis was

---

[1] Both parties proposed an evidentiary hearing. An evidentiary hearing is not necessary for the Court to make its finding.

MEMORANDUM DECISION AND ORDER - 1

convicted of Aggravated Assault in Idaho State Court, a crime which carried a punishment of more than one year. Dkt. 1. As a result of that conviction, Davis was prohibited from possessing firearms. 18 U.S.C. § 922(g)(1). In 2017, Davis was found to be in possession of two different firearms. A grand jury indicted Davis on this charge. *Id*. The Government also charged Davis with Distribution of Methamphetamine and Distribution of Marijuana. 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841 (b)(1)(C). On May 1, 2018, Davis pled guilty to Count I (firearm) and Court II (possession) as part of a plea agreement. Dkt. 18. The remaining charges were dropped. On January 9, 2019, the Court sentenced Davis to imprisonment for a term of 170 months.[2] Davis was credited with time served. Because he had been in prison since December 2017, he had already served approximately 25 months of his sentence.[3] Dkt. 45. Davis is currently incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"), with an anticipated release date of February 10, 2030.

On April 4, 2022, Davis filed the instant Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c). Dkt. 67. On February 15, 2022, Davis petitioned the Warden at FCI Sheridan for release. Dkt. 67-1. There is no evidence submitted to indicate the Warden has responded. Thus, because at least 30 days have passed since the submission of the request,

---

[2] The Presentence Investigation Report ("PSR") listed Davis as an armed career criminal under 18 U.S.C. § 924(e). Davis objected, but the Court overruled the objection and found the enhancement applicable. This finding significantly increased Davis's sentence because an armed career criminal carries a mandatory minimum sentence of fifteen years. *See United States v. Davis*, WL 112771 (D. Idaho Jan. 4, 2019).

[3] The parties dispute how much of his sentence Davis has served at this point. *Compare* Dkt. 72 at 1 ("The Defendant has served less than a quarter of his 170-month sentence") *with* Dkt. 75 at 2 (noting that Davis has served 53 months, or one-third, of his 170-month sentence). The Court agrees with the Defendant. As of this writing, Davis has served approximately 57 months which is a third of his sentence.

Davis may petition the Court for relief. 18 U.S.C. § 3582(c)(1)(A).[4]

Davis makes his request in light of his wife's recent passing. Dkt. 67. He argues the Court should grant the motion so that he may take care of his four-year-old son.[5] *Id.* Since birth, Davis's son has experienced health issues and has required several surgeries. PSR ¶ 75. Davis's wife had been caring for their son until her unexpected death on February 11, 2022. Dkt. 67. Since her passing, the son's maternal grandmother (Teresa) has been taking care of him. Dkt. 75, at 3. However, because Teresa works most days, the son has been spending the majority of his time with Andrea Shartzer—Ms. Davis's sister-in-law from a previous marriage.[6] *Id.* Teresa and Andrea have filed co-guardianship petitions for the son in Idaho State Court. Dkt. 75-2.

Davis contends that his wife's unexpected death is an extraordinary and compelling reason warranting early release. *Id.* Furthermore, Davis argues that he has served a sufficient sentence pursuant to the sentencing factors under 18 U.S.C. § 3553(a). *Id.*

### III. LEGAL STANDARD

Davis seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain

---

[4] The Government does not contest this point. Dkt. 72, at 2 ("The Defendant exhausted his administrative remedies.").

[5] The Court notes that Davis's son was born on November 23, 2017. Dkt. 68. Davis was incarcerated on December 20, 2017. Thus, Davis and his son only had one month of a relationship prior to Davis's incarceration. Aside from interactions they have had while Davis has been in prison, they have spent little time with each other.

[6] Notably, the Government points out that Davis's other two minor children are in the custody of Davis's sister. Dkt. 72, at 3; *see also* PSR ¶ 76.

circumstances.[7] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[8] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP

---

[7] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[8] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 4

denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Davis submitted a request for Compassionate Release with the Warden at FCI Sheridan on February 16, 2022; currently there has been no response. Dkt. 67-1. The Government agrees that more than 30 days have passed since Davis's request to the Warden. Dkt. 72, at 2. Because Davis filed his present Motion 30 days after submitting his request to the Warden with no response, the Court finds that he has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Having determined that Davis has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Davis bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

MEMORANDUM DECISION AND ORDER - 5

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Davis has presented a circumstance that is recognized by the sentencing guidelines in subdivision (C) of U.S.S.G. 1B1.13, Application Note 1—the "family circumstances" prong. Under the "Family Circumstances" prong, certain conditions may constitute extraordinary and compelling reasons for release:

    (C)    Family Circumstances.—

        (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)        The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, Application Note 1(C). The current situation would fall under the purview of subdivision (C)(i) given the unexpected death of Davis's wife.

    However, the Court is not prepared to outright declare this to be an extraordinary and compelling reason. There is no indication from Davis that he is the only available caregiver for his son.⁹ Courts routinely deny compassionate release motions "when the defendants cannot show that they would be the only available caregiver of a minor child." *United States v. Vela-Salinas*, 2022 WL 391490, at *4 (M.D. Tenn. Feb. 8, 2022); *see also United States v. Strong*, 2021 WL 2953999, at *3 (D. Haw. July 14, 2021) (granting a compassionate release motion only after determining there were no other adults who could care for the child).

    Here, Davis has not presented anything to the Court showing that Davis is the only one available to care for his son. Instead, Davis does the opposite. Currently, Teresa (the son's maternal grandmother) and Andrea (the mom's ex-sister-in-law) are taking care of the son. In fact, they have filed co-guardianship petitions in State Court. There are willing and able adults to take care of Davis's son. Although it may not be ideal for the son to grow up without his father, Davis's criminal history does not sure up confidence that he is the

---

⁹ The Court is cognizant of the fact that Davis is filing his Motion under (C)(i) (which does not require that there be *no* available caregiver for a minor child) and not under (C)(ii) (wherein the applicant must demonstrate there is *no* available caregiver for a spouse or partner). However, the Court is also aware that these guidelines are not binding, but are merely helpful in forming a Court's discretionary opinion. *See Aruda*, 993 F.3d at 801.

MEMORANDUM DECISION AND ORDER - 7

best option.[10]

Davis points to two separate cases to support the idea he should be granted an early release. The first is *United States v. Morrison*, 501 F. Supp. 3d 957 (D. Nev. 2020). This case is easily distinguishable. There, the court concluded there was no available caregiver because the current caregiver was declining in health.[11] Such is not the case here. Both caregivers—Teresa and Andrea—appear to be healthy and able bodied. The only contention Davis has is that Teresa works full time—thus, the son will often spend time with Andrea. The Court sees no issue with this, and Davis has given none. The second case is *United States v. Kesoyan*, 2020 WL 2039028 (E.D. Cal. Apr. 28, 2020). This case presents facts similar to *Morrison*—the son in that case was under the care of people who had serious medical conditions which hindered their ability to provide adequate care. Such is not the case here.

Furthermore, the 18 U.S.C. § 3553(a) factors weigh against Davis's release at this time.[12] Davis is considered an armed career criminal and has a significant criminal history

---

[10] The Court notes that Davis continued his criminal activity even after the birth of his son. Not only this, but Davis is also the father of two other children from a previous marriage. The fact that Davis continued committing crimes despite being a father is troubling to the Court. *See* PSR ⁋ 71, 75, 76.

[11] The caregiver in *Morrison* was the children's mother who had spinal stenosis and degenerative disc disease. 501 F. Supp. 3d at 959. She physically was unable to take care of the children. *Id*.

[12] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

dating back to 1996. PSR ¶ 29–56. As outlined in the PSR, Davis has spent a considerable amount of time in prison yet has continued to recidivate upon release. The underlying conduct for which he is currently serving his 170-month sentence involves the illegal possession of firearms and the illegal possession and distribution of methamphetamine. *See id.* at ¶ 1–2. This lengthy criminal history, combined with the current offense is concerning to the Court. There has been no indication that Davis is ready to be released. Nor is the Court convinced he "has been adequately punished for his conduct." Dkt. 67, at 10. At this time, Davis has only served a third of his sentence. Granting an early release when so little of his current sentence has elapsed does not adequality serve the interests outlined in § 3553(a). Moreover, the Court agrees with the Government's argument that the public is currently best protected by Davis's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Davis early.

In sum, the Court finds that Davis has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court

---

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 9

cannot depart from its prior sentence and release Davis at this time. Accordingly, the Court must DENY Davis's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Davis's Motion for Compassionate Release (Dkt. 67) is DENIED.

DATED: September 22, 2022

David C. Nye
Chief U.S. District Court Judge